UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JESSE L. PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:12-cv-00675-PPS |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Jesse Payne seeks review of the Social Security Administration's (SSA) decision to deny his application for disability insurance benefits. Payne applied for child's benefits in 2009, when he was 39 years old, because he had been turned down for benefits previously under his own insurance since he hadn't worked enough quarters to be covered. Payne now seeks benefits based on his deceased father's Social Security. To get child's benefits, Payne needs to show that he has been unable to work due to disability since before he turned 22.

The administrative law judge who heard the case held a 23-minute disjointed hearing at which Payne didn't get a chance to testify fully and at which no medical advisor was consulted. The ALJ indicated that he would end the hearing to seek records from previous applications and later reconvene the hearing. Then, about a month after the hearing, the ALJ issued an opinion denying benefits based on the fact that the record didn't indicate disability before age 22 and did indicate substantial gainful activity (which means Payne wasn't disabled) after age 22. On appeal, Payne claims that the ALJ erred in several respects but for present purposes I will focus on only two of the issues: whether the ALJ failed to develop a full and fair record by cutting the hearing short and whether the ALJ was correct in finding that Payne's work history in 2000 disqualified

him from receiving child's benefits.

In sum, I agree that the record needs to be more fully developed in terms of form, severity and onset of disability, as well as Payne's work history. Therefore, the matter is **REMANDED** back to the ALJ to develop a fuller record – Payne deserves the chance to testify, more work history and paycheck records would be helpful in creating a full record, and a medical advisor's review of the 1989 records might shed light on Payne's disability, if any, when he was 19. Although Payne's efforts at obtaining child's benefits are likely a long shot, he has to at least be given a reasonable opportunity to fully present his case.

Additionally, Payne moved to supplement the record (Docket Entry 22) with medical records from The Hamilton Center for treatment Payne received there between 2001 and 2005. While these records don't appear relevant to the issue of Payne's disability before age 22, they do bear on Payne's work history in 2001 and the reasons he stopped working, so the motion to supplement is **GRANTED**.

## BACKGROUND

Payne filed the present claim in 2009, alleging a disability onset date of April 30, 1992, less than two weeks before Payne turned 22. (Record 10, 165.) The ALJ held a hearing on June 2, 2010 (R. 331-45) and denied the claim on July 25, 2011. (R. 10-18.) The SSA Appeals Council denied review of the decision on August 30, 2012, making the ALJ's decision the SSA's final one. (R. 3.) Payne has appealed the SSA's decision.

My decision at this point is based on procedural rather than substantive factors, so a full medical history isn't pertinent. The two big factual issues are whether Payne was disabled before he turned 22. Then, assuming he was disabled heading into his twenty-second birthday, the other big issue is whether he engaged in substantial gainful activity after he turned 22, which would

mean his disability hasn't been continuous. The earliest documents in the record are from 1989, when Payne was 19 and was sent to a residential substance abuse treatment program in connection with criminal charges he was facing for burglary and arson. (R. 169.) The report presents Payne's depressing upbringing and is rife with his long history of substance abuse, as well as tales of serious family dysfunction. (R. 169-71.) Payne had multiple law enforcement contacts, the earliest when he was 14. (R. 170.) Payne reported several symptoms often connected with mental health issues or drug abuse to the drug treatment facility, including seizures, blackouts, suicide attempts, depression, and paranoia. (R. 170.) The records don't indicate that Payne was on any medications for mental illness while he was in the substance abuse program, and he wasn't prescribed any there. (R. 14-15.) There are no records from 1990 to 2000. Payne turned 22 in 1992. (R. 165.)

Payne did some work in 2000 and 2001, although the record doesn't say exactly how long he worked, or exactly where. Payne testified about working for John Deere through the temp agency Manpower. But he also worked at Burger King and some other jobs, and there was no testimony about those, or the reasons Payne left them. (R. 339, 341.) He appears to have worked five to six months in 2000 and to have earned over $11,000. (R. 12-13.) Payne testified that he did well at John Deere while on haldol (an antipsychotic), but they required a forklift certification before Payne could be fulltime, and the job seems to have gone off the rails from there and Payne's work success ended. (R. 342.) Payne says that he stopped working because he "got sick mentally, real bad. Started having hallucinations." (R. 338.) Payne then did an unspecified number of other jobs for an unspecified period of time. (R. 341.) The fact that this work attempt period was unsuccessful due to mental illness is backed up by a psychiatric evaluation from the Hamilton Center that says Payne entered Logansport State Hospital in early January 2001 and stayed into April. (DE 22-1 at 12.) There are other records from 2001 and on, but they aren't relevant at this

3

point. Payne successfully applied for Supplemental Security Income in 2003 upon showing the required level of severity of his "schizophrenia, paranoia and other functional psychotic disorders." (DE 27 at 2, R. 49-50.)

The ALJ denied Payne's application for child's benefits. He said that the prior denied application may preclude this one, but he went on to consider the merits of Payne's current case anyway. (R. 10.) The ALJ held that Payne hasn't suffered from a disability under section 223(d) of the Social Security Act since Payne was 22. The ALJ's reasons for the finding were twofold: First, the ALJ held that Payne had engaged in substantial gainful activity in 2000. (R. 12-13.) Second, the ALJ found that there was no evidence to show that Payne was disabled before he reached age 22. In fact, the ALJ found that the evidence indicated Payne didn't suffer from a disability at age 19. (R. 13-18.)

## DISCUSSION

Payne seeks child's benefits under 20 C.F.R. § 404.350, which means Payne needs to show that he (1) is the child of an insured person entitled to old-age or disability benefits or who has died, (2) is dependent on the insured, (3) applied for benefits, (4) is unmarried, and (5) is over 18 years old and has a disability that began before he turned 22. Only the fifth element is contested here. It is insufficient for Payne to show that his disability stems from an impairment that he suffered before he was 22 if the impairment was not disabling before he turned 22. In other words, the *disability* must have begun before age 22 and continued to the present. "[T]he legislative history as well as every other opinion in this and other circuits requires a showing that the impairment had reached disabling severity prior to age 22." *Lieberman v. Califano*, 592 F.2d 986, 987 (7th Cir. 1979) (footnotes and citations omitted).

First off, the ALJ made a confusing reference to *res judicata* in his opinion, citing to 20

4

C.F.R. § 404.957(c)(1). I take it he was suggesting that because Payne's benefits claim was denied in 2008 and Payne didn't appeal, that somehow precludes the current claim. The principle of *res judicata* says that once a court has made a final decision on a cause of action based on particular facts, that decision stands, even if the same parties and cause of action and facts are brought up in another case. This allows judges to make quick work of vexatious and repetitive filings. The application of *res judicata* is completely inapposite here. The prior application was based on Payne's own work record around 2001, not on his father's work record. It was denied because Payne hadn't worked enough to be insured, not because Payne wasn't disabled. (DE 27 at 1-2.) Now, Payne seeks child's benefits based on his father's work record under 20 C.F.R. § 404.350, and in doing so Payne needs to show he *hasn't* worked. He is seeking benefits under a different code section and his motivation and required factual showings are different, so these issues haven't been decided before.

Moving on to the merits, if the ALJ's findings of fact are supported by "substantial evidence" then they must be sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *See Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In making a substantial evidence determination, I will review the record as a whole, but will not reweigh the evidence or substitute my judgment for that of the ALJ. *Id*.

The inquisitorial proceeding before the ALJ in social security disability cases is the odd man out in the American system, which is generally an adversarial system. The ALJ doesn't just listen to evidence presented by the parties appearing before him, instead he bears an independent

5

"duty to investigate the facts and develop the arguments." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "It is a basic obligation of the ALJ to develop a full and fair record. Failure to do so will authorize remand for further hearing." *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (internal citation omitted).

Quite simply, Payne and his attorney showed up at the hearing, Payne testified about his work at John Deere, then the hearing got sidetracked by the dearth of records and ultimately was continued. Payne didn't testify about the period leading up to and during the 1989 criminal activity and treatment program, or the period from 1989 to 1992, when he turned 22, or the period from 1992 to 2000, before Payne's period of work. There aren't just holes in this story, there are more holes than story. The ALJ's opinion indicates that he found inconsistencies in Payne's testimony, but the ALJ didn't hear Payne out fully and disregard testimony, nor did he decide to cut Payne's testimony off because Payne was completely incredible. Rather, the fact that Payne didn't get to testify fully seems to have been a simple mistake – the hearing was supposed to continue after a search for more records, and part two just never happened. Allowing the claimant to testify about the relevant facts and time periods seems like the minimum necessary for a full and fair record.

Even if the ALJ had found Payne to be disabled before age 22, the ALJ's separate finding that Payne had engaged in substantial gainful activity in 2000 would disqualify Payne for child's benefits if that finding weren't also deficient. However, the record *is* deficient on that point. Payne worked for an unspecified, but not very long, period of time in 2000, and appears he did not work before or after that brief period of time. His income was modest, but that won't disqualify him for benefits if the period counts as an unsuccessful work attempt rather than as substantial gainful activity. The significant breaks before and after Payne's period of work are required to define the work as an unsuccessful attempt under Social Security Ruling ("SSR") 05-02 (interpreting SSR 84-

25).

As for the other conditions for finding a work attempt unsuccessful, the record simply isn't clear: Payne seems to have worked between three and six months, which means that he has to show he stopped working because of his impairment. In that regard, Payne testified that he left those jobs because he started hallucinating, and there's no evidence to the contrary. He also has to show that he was frequently absent from work due to his impairment, or his work was unsatisfactory due to his impairment, or the work attempt was during a period of temporary remission, or his work was done under special conditions. Any of these four requirements could be true given the current record. He quit John Deere, but he may have just tapered off or stopped showing up due to the added mental stress of having to go someplace different and get forklift certified. His mental illness may have been in remission due to haldol, but the record doesn't show when he started or stopped taking that, or by whom it was prescribed (and there may be psychiatric records related to the prescription). It's even possible, although it seems unlikely given the current record, that Payne worked at John Deere under a program that afforded him special working conditions. In sum, there are too many questions and not enough answers.

The ALJ addressed the 2000 work period by first noting that Payne's monthly salary was well over the statutory minimum to establish a presumption of substantial gainful activity. (R. 12, DE 27 at 6-7, http://www.ssa.gov/oact/cola/sga.html.) However, "[t]he claimant may . . . rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." *Jones v. Shalala*, 21 F.3d 191, 193 (7th Cir. 1994) (quotation marks and citation omitted).

To that end, the ALJ went on to consider the possibility that Payne's 2000 work was an unsuccessful work attempt rather than substantial gainful activity:

7

> [T]he work may have been classified as an unsuccessful work attempt if it was performed for six months or less, however, in this instance, while the claimant specifically worked for Manpower for an undetermined amount of time, there is evidence that he worked several other jobs in 2000 (ex. 1D at 17 [R. 59]). Thus, taken together, it is clear that the claimant engaged in substantial gainful activity in 2000, which would bar him from claiming disability prior to the age of twenty-two.

(R. 12-13.) The logic just doesn't follow. The ALJ didn't address the factors of an unsuccessful work attempt. Nothing in the ALJ's analysis, or in the record, indicates the total amount of time that Payne worked, or how long he spent between jobs, or how long he spent on any of the other jobs. The sparse records suggest that he didn't work at the others for more than a few days apiece. (R. 59.) Bouncing around from job to job and simply having a lot of different jobs in a short period of time aren't substantial evidence of substantial gainful activity; they might actually be evidence of just the opposite. The record needs to be developed on the 2000 work history, at the very least by allowing Payne to testify more fully about it.

Finally, it doesn't appear that any medical advisor has reviewed the entire record and offered an opinion about the onset of Payne's disability. I say onset because the SSA *has* found that Payne was disabled in 2003 due to psychotic disorders, although the disability was deemed non-permanent and subject to medical review every three years. (DE 27 at 2.) While the ALJ in this case simply decided that Payne didn't suffer from a disability prior to reaching age 22, what that means is that Payne's disability onset date was sometime between May 1992 and October 2003, when the SSA found Payne disabled. It is true that if medical evidence does not reveal an exact onset date, the ALJ has to infer one. SSR 83-20; *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987). But when the ALJ has to infer an onset date, SSR 83-20 requires that the ALJ consult a medical advisor. *Lichter*, 814 F.2d at 434; *Gutka v. Apfel*, 54 F. Supp. 2d. 783, 787 (N.D. Ill.

8

1999) (SSR 83-20 "requires an ALJ to call upon a medical advisor in cases where the onset of a disability cannot be affixed to a particular date and must consequently be inferred."). This consultation is unnecessary when the medical record is complete enough to unambiguously fix the correct onset date. *See Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). It may be that a medical advisor will see something in the 1989 records that suggest disability (the assessment and treatment were done with an eye to substance abuse, not necessarily to general mental health issues, and the facility staff may simply have been untrained to assess broader mental health issues), or may say that Payne's 2003 psychotic disorders tend to follow an onset pattern or identifiable developmental stages that allow the medical advisor to suggest an onset date.

That said, a medical opinion offered based on old and incomplete records may not convince the ALJ, and that would be the ALJ's prerogative. The Seventh Circuit's opinion affirming the district court's affirmance of the ALJ's denial of benefits in *Lieberman v. Califano*, 592 F.2d 986, 987 (7th Cir. 1979), is instructive. There the claimant sought child's benefits when she was in her sixties. The earliest medical evidence was from when the claimant was about 38. There was also a psychiatrist's current diagnosing report from when claimant was in her sixties that extrapolated that claimant's condition had begun 40 years prior, before the claimant turned 22. Three lay witnesses also offered opinions in support of finding that the claimant suffered from a disability before age 22. The ALJ afforded the diagnosing report "significant weight," but found that the evidence still didn't establish the onset of a disability before age 22. The Seventh Circuit found that the ALJ had been right to consider the psychiatrist's diagnosing report, but that the report didn't need to be afforded conclusive weight. *Id.* at 991. The Seventh Circuit also found that the lay opinions didn't change the outcome. *Id.* at 992. Payne's case might be a bit stronger, as there is some direct medical evidence from before Payne turned 22. But it's not direct evidence of disability, and any

current opinion would still have to extrapolate an onset date, so the ALJ would have to decide the appropriate weight to afford any such opinion. Regardless of the ALJ's ultimate decision, additional medical input might be helpful to the development of a full and fair record.

## CONCLUSION

For the reasons set forth herein, the matter is **REMANDED** back to the agency for further proceedings consistent with this opinion. Payne's motion to supplement the record (DE 22) is **GRANTED**.

**SO ORDERED**.

ENTERED: March 13, 2014

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT